HENRY R. PIERSON as Receiver, etc., Respondent, v. THE ATLANTIC NATIONAL BANK OF NEW YORK, Appellant.

The G. M. Life Insurance Company loaned certain moneys, for which it received the individual notes of T., defendant's cashier; the checks for the amounts loaned were made payable to the order of T., and the entries of the loans in the books of said company were as made to T. *Held*, that these were not conclusive that the loan was made to T. individually; but that it was proper to show by oral evidence that the loan was made to defendant.

Also, *held*, that evidence of conversations had between the officers of the company and T., and defendant's president, both during the transactions relating to the loans, and thereafter, in regard thereto, and in reference to collaterals given to the company therefor, was competent.

*First Baptist Church* v. *B. F. Ins. Co.* (28 N. Y., 153); *First Nat. Bk.* v. *Ocean Bk.* (60 id., 278); *Jex* v. *Board of Education* (1 Hun, 157), distinguished.

Also, *held*, that for the purpose of rebutting any presumption arising from the form of the entries in the books of the company, it was competent to show similar entries in said books of a former loan made to defendant.

(Argued April 17, 1879; decided May 20, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was originally brought by the Guardian Mutual Life Insurance Company of New York to recover two loans of $25,000 each, alleged to have been made by it to defendant. The defense was that the loans were, in fact, made to one F. L. Taintor, who was defendant's cashier, and not to the defendant.

The present plaintiff, having been appointed receiver of said company, was substituted as plaintiff in its stead.

The facts appear sufficiently in the opinion.

*John L. Cadwalader*, for appellant. All evidence which contradicted the contract, as shown by the written instruments, was improper. (*Lincoln* v. *Crandall*, 21 Wend., 101; *Auburn City Bank* v. *Leonard*, 40 Barb., 119; *Williams* v. *Christie*, 4 Duer, 29; *Babbitt* v. *Young*, 51 N. Y., 238; *Norton* v. *Woodruff*, 2 id., 153; *Gales* v. *Comstock*, 4 id., 270; *Clark* v. *Baird*, 9 id., 183; *Pollen* v. *Le Roy*, 30 id., 549; *Richard* v. *Millard*, 56 id., 582; *Mott* v. *Richtmayer*, 57 id., 49.) Statements or admissions by the president or the cashier after the contract was made are not competent evidence against the defendant. (*Jex* v. *Board of Education*, 1 Hun, 257; *Baptist Ch.* v. *Brooklyn Fire Ins. Co.*, 28 N. Y., 153; *First National Bank* v. *Ocean Bank*, 60 id., 258.) It was error to receive in evidence entries in another transaction between the parties to govern and characterize this one. (*Cary* v. *Halating*, 1 Hill, 316; *Hall* v. *Naylor*, 18 N. Y., 588; *French* v. *White*, 5 Duer, 259; *Ross* v. *Ackerman*, 46 N. Y., 210; *Richards* v. *Millard*, 56 id., 582; *Baptist Ch.* v. *Brooklyn Fire Co.*, 28 id., 158; *Thurman* v. *Mosher*, 8 Hun, 347; *Richards* v. *Millard*, 56 N. Y., 584; *Platt* v. *Reynolds*, 27 id., 586; *Carpenter* v. *Ward*, 30 id., 243.

*Rufus W. Peckham*, for respondent. Parol evidence was admissible to explain any written instrument which *prima facie* would show a loan to the individual instead of to the bank. (*Coleman* v. *Bank of Elmira*, 53 N. Y., 388; *Van Leuvan* v. *Bank of Kingston*, 54 id., 671.) The declara-

tions of the defendant's president and cashier were competent evidence. (*Hoag* v. *Lamont et al.*, 60 N. Y., 96; *Burnside* v. *Grand Trunk Ry. Co.*, 47 N. H., 554; *Hamilton* v. *Railroad*, 51 N. Y., 100; *Whitaker* v. *Railroad*, 51 id., 295; *People* v. *Davis*, 56 id., 96; *Packet Co.* v. *Clough*, 20 Wall., 528; *Insurance Company* v. *Mahone*, 21 id., 152; Story on Agency, § 134; *Barnes* v. *Ontario Bank*, 19 N. Y., 152, at 156; *Curtis* v. *Leavitt*, 15 id., 9.)

Miller, J. The notes given when the loans of money were made, to recover which this action was brought, were both signed by F. L. Taintor, payable to the order of A. W. Gill, president, and contained a statement that United States bonds were pledged as collaterals. The checks for the several amounts were signed by Gill as president and payable to the individual order of Taintor. Gill was the president of the Guardian Mutual Life Insurance Company, and Taintor was the cashier of the Atlantic National Bank of New York. The entries made in the books of the plaintiff's company were in each case, "Call loans, gov'ts; F. L. T.; $25,000." The papers and entries, on their face, appear to establish that the loans were made to Taintor individually and not to the bank. They are not, however, conclusive, and are open to explanation by parol testimony. Such evidence was introduced upon the trial, and the referee found in substance that the loans were made to the bank, and held that the bank was liable for the same. It is urged that there was no evidence to justify such finding; and that, in this respect, there was error which demands a reversal of the judgment. The evidence shows that prior to the loans being made, the president of the insurance company had negotiations with the president and cashier of the defendant, who asked whether the Guardian Life Insurance Company had money, and the amount which was actually loaned, $25,000, on two different occasions; and that afterwards the several loans of $25,000 each were made, and government bonds held by the bank were delivered and held by the Guardian

Mutual Life Insurance Company as collateral security to such loans.    There is no evidence that these securities delivered and pledged belonged to Taintor individually, or that he claimed any property in them, or that he sought to use them for individual purposes, nor that Taintor applied for a loan on his individual responsibility.    It also is proved that the vice-president of the insurance company had conversations with the defendant's officers in regard to loans to the bank, and told them that if they had good collaterals, they would as soon loan to them as any one.    After the loans were actually made, conversations of a like nature between the officers of the insurance company and of the bank were had, and the transactions which took place tend to sustain the theory that the bank, and not Taintor, was the borrower. The securities having been frequently changed by the bank, notice was given at the bank that the loan must be paid or permanent securities deposited.    Taintor then suggested that the bonds be left in the bank and receipts given for the same. The bonds were delivered accordingly, and a statement made in writing, signed by the cashier, as such, dated so as to correspond with the date of the loans, and purporting to be from the bank, to the effect that : " The bank holds for account of A. W. Gill, president," the bonds in question. The president of the bank, upon being advised of what had been done, said, whatever the cashier signed was all right, and the receipts were all right.    In this interview, the bonds were spoken of as being collateral to the loans made to the bank, or as loans.    Here was a distinct recognition, in the receipts and in the conversation, that the loan was for the bank by both the cashier and the president, which cannot be disregarded.    Although two other receipts were produced on the trial by the defendant, which were claimed to have been found in the envelope which, it is said, contained the bonds after the bank had failed, and refer to the bonds as " collateral on loans to F. L. Taintor," it is not proved that the officers of the insurance company ever saw them before the trial ; and the evidence warranted the conclusion arrived

at by the referee, that the receipts produced by the insurance company, and which were in their possession, were actually given, as sworn to, when the bonds were left with the bank.

It also appears that the Guardian Company previously made another loan, in the same year, of $20,000, with gov- . ernments as collateral; that a check was drawn for the money to the order of the defendant; that entries of the same were made in the books of the company of a similar character to those relating to the loans now in controversy; and that the loan last mentioned was finally paid by a check drawn upon the defendant's bank signed by Taintor as cashier.    It will be observed that in the entries in cash book and ledger Taintor's name appears to have been used as synonymous with the bank or with his name as cashier.

The general facts to which we have adverted were, we think, sufficient to warrant the conclusion at which the referee arrived; and his finding, therefore, is upheld by the testimony.    Whether the evidence introduced to establish the same was competent, presents other questions which will be hereafter more particularly considered in connection with. the rulings of the referee during the trial, to which exceptions were taken.

Objections were made upon the trial, to the testimony, and exceptions taken to the ruling of the referee as to the same. The objection first made was to a question put to the president of the insurance company, as to transactions with the defendant except the one involved in this suit; and the referee held that the evidence should not extend beyond the pleadings, and allowed testimony in regard to the negotiations which transpired prior to the loans and conversations had with the president of the insurance company and the officers of the bank relating to such loans.    I do not see that the testimony given extended beyond the objection made, and therefore there was no error in this respect.

The objection made to the testimony of the vice-president as to what the insurance company did after the loans were made, in connection with the loans, is not, I think, well

taken.   The witness had no knowledge of the making of the loans, and it was entirely competent to prove, as was done, that the bonds were taken as collateral, and also the deposit of the same by him.

The subsequent testimony of Clapp, the vice-president of the insurance company, as to the conversations with Taintor, the cashier of the defendant, and with the defendant's president, in regard to the changing of the bonds held as collateral to the loan; the calling in of the loans by the insurance company, and the depositing of the bonds in the defendant's bank, was properly received.   So also the conversation had between the officers of the two institutions on the subject, after the receipts had been given and the bonds deposited, was not liable to objection.

As to the conversations prior to and at the time when the bonds were deposited, they constituted a part of the transaction relating to the loans; and it was not fully complete until the receipts were actually given and the bonds deposited, in accordance with the same.   Even if they constituted any contradiction or change of the original contract, as the result of the prior negotiations was in writing, they were admissible to show the entire contract of the parties, which was completed by the giving of the receipts.   The conversations after the loans, and after the receipts, were also competent as the declarations of• parties which characterized the preceding acts in reference to the several loans.   The loans made were evidently what is termed "call loans," payable on demand.   The declarations proved were made to the vice-president of the insurance company, in the defendant's bank, when the vice-president notified the latter that the money was required.   The declarations of the president and cashier of the defendant were also made while they were engaged in the discharge of their duties; related to the business of the bank, and were manifestly within the scope of their authority.   (*Hoag* v. *Lamont*, 60 N. Y., 96.)

The cases cited by the appellant's counsel in opposition to this rule do not sustain the doctrine contended for.   *First*

*Baptist Church* v. *Brooklyn Fire Ins. Co.* (28 N. Y., 153), holds merely that the admission of a secretary of an insurance company, while not engaged in the performance of any act relating to his agency, so as to bring the case within the rule which allows the declaration of an agent as a part of the *res gestœ,* was incompetent. This has no application where the declarations were made while engaged in the performance of the duty of the office, as was the case here. In *The First National Bank* v. *The Ocean Bank* (60 N. Y., 278), the admission proved was made by the president of a bank when, as stated, he was not acting within the limit of his authority, and hence could not be binding. In *Jex* v. *Board of Education* (1 Hun, 157), the statement of a trustee, not constituting a part of the *res gestœ,* was held incompetent ; and for this reason that case is not in point. The statements of the officers here, being made while the business was transacted and at the time when the officers who made them were engaged in the performance of their duties, were clearly admissible. The objection that they contradicted the written contract is not available ; because first, that point was not made on the trial ; and second, there was no contract entirely in writing. The proofs show checks and *receipts,* signed by the cashier of the defendant, and entries in the books of the insurance company, which are not entirely clear as a whole and on their face, and the evidence given explains these transactions.

Upon the question as to whom the loan was actually made, it was competent to show by parol that the loan was to the bank, and not to Taintor, the cashier : (*Coleman* v. *Bank of Elmira,* 53 N. Y., 388; *Van Leuven* v. *Bank of Kingston,* 54 id., 671.) These cases are directly in point and, I think, dispose of the question. The attempted distinction sought to be maintained, on the ground that a distinct contract was shown in the cases cited, is not well founded ; for here also it appears quite clearly from the parol evidence that the contract for the loans was for the benefit of the bank only, and that they were not intended as loans to Taintor indi-

vidually.   Besides, the receipt finally given establishes this fact, and the parol evidence tended to explain what might be considered, from the other papers and the entries in the books of the insurance company, as not entirely clear.

The evidence as to entries made, in reference to a former loan, in the books of the insurance company, was also properly received.   The defendant's counsel had introduced evidence of checks drawn to ma... the loans, the notes given at the time signed by Taintor, and entries in the cash-book of the insurance company, claiming that they showed a loan to Taintor.   To rebut the inferences to be drawn from the entries last stated, proof was given that on a former occasion, when on its face and in fact the loan was to the bank, beyond any question, the entry was the same.   We think that the plaintiff had a right to this explanation of the entries in its own books, which the defendant had put in evidence, and that he was authorized to show that such entries did not necessarily prove that the transaction was with Taintor individually.

The evidence introduced to contradict the receiver of the defendant I think was competent.   He had given evidence tending to show that Mr. Gill, the president of the insurance company, had certain receipts in his possession on his visit to the bank.   He was asked if he had not said before this time that when Gill came to the bank he had no receipts; and he denied that he had so stated.   In this respect, it was proper to show that he had, and thus contradict his evidence.   The other questions as to the admission of evidence do not demand comment.   As the plaintiff is entitled to recover for the money loaned, it is not necessary to consider whether the defendant is liable for the second or the third cause of action set forth in the complaint.

No other question raised demands consideration; and as no error appears to have been made upon the trial, the judgment must be affirmed, with costs.

All concur, except Church, Ch. J., absent.

Judgment affirmed.