ALEXANDER BARTOW, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

In order to sustain an indictment, under the statute relating to embezzlements (2 R. S., 678, § 59, as amended by chapter 207, Laws of 1874), against the treasurer of a corporation, for the alleged conversion to his own use of money of the corporation, it must be made to appear that the money in question came into his possession or under his care by virtue of his office.

Upon the trial of such an indictment it appeared that B., the prisoner was treasurer of a savings institute, and was also cashier of a bank; the two corporations occupying the same room and doing business over the same counter. By the by-laws of the institute it was provided that its president should have charge of its securities and property; also, that the money of the institute should be deposited with the bank; it was so deposited, credit being given to the institute. A bond of $1,000 belonging to the institute was placed in the hands of F., its attorney, for collection; by whom did not appear. F. collected the bond, and retained the money for the purpose of making another investment, depositing it to his own credit in said bank; subsequently he drew, on his own check, $600 from the bank; this with other moneys, all amounting to $1,500 he placed in a package addressed to B., whether officially or personally did not appear. This package was delivered to S. who handed it to B. on the street after banking hours. B., in accordance with the custom of business of the bank, was going to New York with a package of money to deposit with its correspondent bank; he deposited both packages there, to the credit of his bank, and on the next day wrote to F., acknowledging receipt of the money, using the letterhead

of the bank, and signing in his usual manner as cashier. The money so deposited in New York was drawn out by the bank, which subsequently suspended. This item of $1,500 was not entered on the books of the institute, or credited to it on the bank books, and it did not appear that F. was credited with it on the books of either corporation. *Held,* that the evidence failed to show as matter of law that the money came to the hands of B. as treasurer of the institute; and that a charge to that effect was error.

(Argued September 23, 1879; decided October 14, 1879.)

ERROR to the General Term of the Supreme Court, in the second judicial department, to review judgment affirming a judgment of the Court of Oyer and Terminer, in and for the county of Dutchess, entered upon a verdict convicting plaintiff in error of the crime of embezzlement.

The facts appear sufficiently in the opinion.

*B. F. Tracy,* for plaintiff in error. The failure of Bartow after having deposited the money of the savings bank in the national bank, to make the proper entries in the books, cannot constitute embezzlement. (Stevens Digest of Eng. Cr. Law, 248; *R.* v. *Hodgson,* 3 C. & R., 422; *R.* v. *Winnall,* 5 Cox C. C., 326.) A count charging that Bartow received the money as agent of an individual is bad. (*People* v. *Allen,* 5 Den., 76; *Coats* v. *People,* 22 N. Y., 245.) An indictment charging a person with converting money to his own use is not sustained by proof that he converted it to the use of an incorporated company. (2 Story on Const., § 1785; *Cruikshank* v. *U. S.,* 92 U. S. R., 542, 556, 558; *Bradlaugh* v. *The Queen,* L. R. [37 Q. B. Div.], 607, 626.)

*Homer A. Nelson,* for defendant in error.

DANFORTH, J. The indictment is founded upon the statute concerning embezzlements (§ 59, art. 5, tit. 3, chap. 1, part 4, R. S., as amended by chap. 207, Laws of 1874), and states a case within its provisions. It charges that Bartow on the 15th of January, 1876, then being treasurer of the

Fishkill Savings Institute, a corporation under the laws of this State, by virtue of his office and employment as treasurer, and while employed as treasurer, received into his possession certain bank-notes, the property of that corporation, and converted the same to his own use, without the consent of the president and trustees of the institute.

At the close of the testimony his counsel insisted that the evidence was insufficient to warrant a conviction, and asked the learned trial judge to direct an acquittal. The request was refused, and the exception then taken brings that question before us. It was proven that Bartow was the treasurer of the savings institute, and also cashier of " The Fishkill National Bank." These two corporations managed their affairs in the same building; together occupying one room and doing their business over the same counter. Each had its own president, but the other offices in the two institutions were filled by the same persons. The by-laws of the institute provided that its president should have charge of the bonds and mortgages and all the other property of the institution; required the treasurer to keep an account of its entire fiscal concerns, exhibit at the regular meetings of the board the bank-book or books, or other vouchers, together with statements of the receipts and payments, attend at the bank during business hours, receive the deposits and see that they are entered in the books of the institution and of the depositors, and perform such other duties as may be assigned to him by the board of trustees. The by-laws also enacted that the moneys of the institute should be deposited with the bank of Fishkill, and in fact, according to the evidence, " it all came in, the same as the money of the National Bank of Fishkill; " was deposited with that bank and credit given by it to the institute. This seems to have been the course of business at all times. The " Merchants' Exchange National Bank " was the New York correspondent of the Fishkill National Bank, and kept its account in that city. In accordance with the usage and custom of business, Bartow was in the habit of going to the city of New York with packages of money to

deposit in the Merchants' Exchange Bank, sending other remittances by letter. To establish the offence alleged in the indictment, it was proven that prior to December, 1875, there was among the assets of the savings institute a bond of $1,000 issued by the village of Poughkeepsie, then past due. Mr. Fowler was the attorney of the institute and resided at Poughkeepsie. Some time in December this bond was placed in his hands for collection. He was examined as a witness on behalf of the People but was unable to state who gave it to him, or "whether it was delivered or sent or how it came." "It came to me," he says, "from the savings institute for collection." It does not appear that it was sent him by Bartow or with his knowledge, and from the fact that under the by-laws the president is made the custodian of such property it may be inferred that he delivered or sent it to the attorney; but, however that may be, the president was not examined as a witness, and there is no evidence tending to show that Bartow intermeddled with it at all. Fowler collected the amount of the bond about the ninth or tenth of December, "retained it with a view to another investment" which he says he "did not make in the end until the first day of February, 1876." In the meantime the money seems to have been on deposit to his own credit in the Fishkill National Bank. On that day he drew on his own check $600 from that bank and placing with it other money derived from some other source which he cannot state, saying "some of the bills had been paid to me in some other way and I used them," made up a package of $1,500, placed it in an envelop addressed, he says, "Alexander Bartow, whether official or personal I am unable to state;" nor is there other evidence on this point. On the afternoon of that day he delivered the package so enclosed to one William M. Stevens. It appears that Bartow, during banking hours of that day, made up a package of currency amounting to $3,000, and at the close of banking hours left the bank taking this package of $3,000 with him, intending to go with it to New York in order to deposit it with the

Merchants' Bank according to his custom. Stevens went to Fishkill, reached there "just at dark," met Bartow in the street, between his house and the bank, and gave to him the package received from Fowler. Bartow placed it in his pocket and the next morning, February second, deposited both packages in the Merchants' Bank to the credit of the Fishkill National Bank, but for some reason not explained the bank received credit for only $4,495, or five dollars less than the packages were supposed to contained. Bartow returned to Fishkill on the evening of the second of February, and on the third wrote a letter to Fowler, dated "The National Bank of Fishkill, N. Y., February 3, 1876," and saying, "Your's with $1,500 received from Mr. Stevens just as I was starting for New York in the evening," and signed "A. B." "C."

It was shown that the C stood for cashier and was Bartow's usual way of signing letters written in that capacity. It was proven that the whole of the money so deposited was drawn out from the Merchants' Bank by the National Bank of Fishkill. The National Bank of Fishkill suspended in 1877. The item of $1,500 was not entered on the books of the savings institute or on those of the National Bank of Fishkill as a credit in favor of the institute, and it appeared that the bond account in the books of the savings institute was short $1,000. No evidence was given as to whether or not Fowler was credited on the books of either bank with the $1,500.

The trial judge in his charge to the jury called their attention to the possession of the bond by Fowler, its collection by him and delivery of the package to Stevens, and by Stevens to Bartow, adding : "You have traced it thus far that the money of the savings institution has arrived at the hands of Bartow, as treasurer of the savings institution. He was also cashier of the National Bank. I say to you that money paid into his hands as treasurer of a bank, and being cashier of another bank, that the law writes it against its miscarriage, — that it went into his hands as treasurer of

the Savings Bank and not as cashier of the Bank of Fishkill. You have the money in his hands." To this charge there was an exception by the defendant's counsel. It seems to be well taken. In substance it was a declaration to the jury as a matter of law that Bartow received the money as treasurer, and this view is upheld in the opinion of the General Term. The evidence above adverted to would seem to show the contrary, — that he received it as cashier. In the first place there is nothing to indicate that he knew the money was sent to him on account of the savings institute. It does. not appear that in fact that institution had any interest in $500, part of it. The residue was not the actual proceeds. of the bond; the money received by Fowler on account of it had mingled with his own. While in Stevens' hands. Fowler could recall it, and if it had been lost by Stevens the loss would have fallen upon Fowler; and without inquiry now whether payment to Bartow in the street would have discharged his obligation to the institute for money collected, the evidence wholly fails to show that the package was. addressed to him as treasurer, or even that Fowler expected. him to receive it as such and not as cashier. Indeed his own. conduct and the acquiescence of Fowler lead to the opposite. conclusion. He deposited the money to the credit of the National Bank in the Merchants' Bank, taking it there in. his own character as cashier, and immediately upon his return to the bank on the third of February, under the letterhead. of the bank and as its cashier, wrote to Fowler acknowledging its receipt. Fowler received the letter and did not dissent from the representation so made. Whatever other conclusion may be drawn from this evidence, it is manifestly insufficient to establish that the money in question came into Bartow's possession or under his care by virtue of his office. as treasurer. Nothing short of that will satisfy the statute. or sustain the indictment. The exceptions above referred to were therefore well taken. As this conclusion will lead to a. new trial when additional evidence may be produced, it is not. expedient to consider the other questions raised.

The judgment of the General Term and Oyer and Terminer should be reversed and a new trial ordered in the Oyer and Terminer.

All concur.

Judgment reversed.