THE FISHKILL SAVINGS INSTITUTE, Appellant, *v.* HENRY BOSTWICK, Receiver, etc., et al., Respondents.

By an agreement between plaintiff, a savings institute, and the F. N. Bank, all of the business of the two corporations was to be done in the same office and over the same counter, by the same individuals, the only separation being in the books of account. Plaintiff as such was to receive no money, but all of its funds were to be deposited in the bank, and corresponding credits were to take the place of actual payments by the bank. The business of the institute and the bank was carried on under this arrangement, the former keeping no cash-drawer or safe for the deposit of money. One C. delivered over the counter of the bank to B., who was treasurer of the institute and also cashier of the bank, a sum of money, which she desired deposited with the institute to her credit. B. received the money, entered it in C.'s pass-book, as deposited with the institute, and, as he testified, placed it in the cash-drawer of the bank ; it was not entered on the bank cash-book or credited to the institute, and, in some manner unexplained, it disappeared. In an action to recover, among other things, the amount of this deposit, *held*, that while as between C. and the institute B. received the money as its treasurer, as between the bank and the institute at the same instant he received it as cashier, it became the money of the bank, and the bank

was liable to the plaintiff therefor ; also, that this was so, although the money did not go into the cash-drawer but was embezzled by B. *Bartow* v. *The People* (78 N. Y. 377), distinguished.

A check was presented at the bank and received by B. to pay money due plaintiff ; it was payable to him as treasurer ; was indorsed by him as such, and then by him as cashier of the bank, and remitted for collection. No credit was given plaintiff therefor on the bank-books. *Held,* that under the general arrangement, the check, when received, became at once the property of the bank ; the institute was entitled to credit for the amount and could recover the same of the bank.

A check drawn upon the bank by a depositor, payable to the order of B. as treasurer, was indorsed by him as such, charged to the drawer in the bank accounts, but not credited to plaintiff. *Held,* that it was entitled to recover the amount.

(Argued May 2, 1883 ; decided June 5, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made September 12, 1882, which reversed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Milton A. Fowler* for appellant. In the absence of proof, on the face of the papers, that the judgment was reversed and a new trial granted upon questions of fact, the reversal will be presumed to have been on questions of law only. (Code, § 1338 ; *Davies* v. *Leopold,* 87 N. Y. 620.) Plaintiff having shown the course of business and an ordinary manner of dealing, and the fact that the Carrigan deposit went into the bank, defendants must show that it went elsewhere, to defeat the claim. (*Bartow* v. *People,* 78 N. Y. 377–381.)

*John Thompson* for respondents.

FINCH, J. The Fishkill Savings Institute brought an action against the National Bank of Fishkill and its receiver, to recover the amount of certain deposits and a balance of interest payable under a special contract. The trial was before a

referee, who awarded judgment in favor of the plaintiff. On appeal the General Term reversed this judgment, and ordered a new trial, but without stating in the order that the reversal was upon the facts. Exceptions were taken to the findings of the referee as to three separate items allowed, and which were sufficient to raise the questions argued at the General Term, and present for the consideration of that tribunal questions of law, which may be reviewed on this appeal.

Each of the three charges disallowed by the General Term depended upon the action of Bartow, who was treasurer of the institute and cashier of the bank. The marvelous manner in which the business of the two corporations was transacted invested him at the same moment of time with a double capacity, and made him concurrently the representative of two separate principals. The proof shows, without the least doubt or contradiction, a general arrangement by which the business of both corporations was to be done in the same office, at the same counter, by the same individuals, the only separation being in the books of account. The institute received no money as such. All its funds were to be deposited in the bank, and from that institution corresponding credits were to take the place of the actual payments. The institute, under the business arrangement agreed upon, had no cash drawer and no safe for the deposit of money, since none was needed, and no money was to be received and retained by it. Under this mode of transacting business, events happened which occasioned the questions now to be considered.

On the 7th of April, 1875, one Joanna Carrigan appeared at the counter of the bank with $3,500 in money, which she desired to deposit with the institute to her own credit. Behind the counter stood Bartow, representing both institutions, as treasurer of the one and cashier of the other. He received the money and entered it in the pass-book of Mrs. Carrigan as deposited with the institute. He testifies that thereupon he placed the money in the cash-drawer of the bank. What became of it we do not know. Neither of the litigants entered upon an inquiry. What we do know is only that the money

so received was not entered upon the cash-book of the bank, nor in any manner credited to the institute. When, at night, the cash was counted and compared with the books, it balanced very nearly, and no large surplus seems to have been disclosed. The value of this test as a basis for an inference is badly damaged by disclosures affecting the accuracy of the cash account of the bank. Balances were often forced; erasures and changes were frequent and unexplained; and at one time for several days there was a difference of about $6,000 between the cash on hand and the balance shown by the books. In addition another circumstance appeared. On the 25th of April, 1876, the same depositor appeared to withdraw a portion of her money. Bartow paid her from the money of the bank $2,000 and entered it in her pass-book, but no entry was made upon the books of either the bank or the institute, and yet at night no shortage appeared. This remarkable cash account adjusted itself to the situation without betrayal of the deficiency. Upon this state of facts the General Term held that there was no proof of a deposit in the bank. The opinion indicates a belief that the money was taken by Bartow while it remained the money of the institute, and before risk and responsibility attached to the bank. We do not concur in that conclusion. The arrangement between the two corporations about which there is no dispute precludes such a theory. Out of the double agency of Bartow, and under the agreed manner of business, it necessarily resulted that while as between Mrs. Carrigan and the institute Bartow received the money as its treasurer, yet as between the bank and the institute at the same instant and at the moment it reached his hands, he received it as cashier and on deposit with the bank. Under the arrangement no possible interval could exist between the receipt of the money and the deposit in the bank, during which Bartow, the individual, could stand between Bartow, the treasurer, and Bartow, the cashier, and by a novel sort of "stoppage *in transitu*," prevent the money from passing at once into the ownership of the bank. Even though he formed the intention of converting the money to his own use, the moment it was placed upon the

counter and did so convert it immediately after having placed it in the cash-drawer, and when the depositor was gone and nobody observed, still it had become the money of the bank at the instant of its receipt. By the same identical act he received it as treasurer and held it as cashier, and if he embezzled it, he took the money of the bank for which it was responsible, whether the responsibility was confessed by a proper entry in the books, or not. The case is not altered if we disbelieve Bartow's statement that the money went primarily into the cash-drawer. There is no reason for doubting that statement, except such general distrust of Bartow as his conduct quite justifies. But admitting that it did not go into the drawer, still the general agreement as to the course of business made it the money of the bank on deposit for the institute the moment it passed from the control of the depositor, for the officer who took it as treasurer upon the instant retained it as cashier. The suggestion of the learned counsel for the respondent of a delivery of the money to Bartow as treasurer in the street, and the conclusion then to be drawn need not trouble our judgment, for such a transaction might prove to be outside of the agreed arrangement and possibly not controlled by it. In the case of *Bartow* v. *People* (78 N. Y. 377) such an outside delivery occurred, but under circumstances which led this court to decide that it was received by Bartow as cashier, and as the money, not of the institute, but of the bank. We see no just reason why we should not give effect in the present case to the agreement of the parties dictating the mode of business. Under it no formal delivery and no separate act was needed to transfer title from the treasurer to the cashier. Under it, title passed at once, and the money received for the institute at the same moment became a deposit in the bank.

The second item rejected by the General Term grew out of a different state of facts. A check for $5,000, drawn by E. and A. C. Kent on Chase & Atkins, and which belonged to the institute was presented at the bank and received by Bartow. It was payable on its face to him as treasurer. He indorsed it as such and then indorsed it as cashier, but gave no credit for

it to the institute. Under the general arrangement above described this check became at once the property of the bank. The indorsements were made accordingly, and the institute was, at once, entitled to credit for the amount. But the further history of the check was developed. On the 5th of April, Bartow remitted it to Wilmerding & McCanliss, brokers in New York, who had an account with the defendant bank, in a letter signed by him as cashier and stating it was for credit. They received and collected it and put it to the credit of the bank in their account. The receiver denounces this account as a fraud, and as being merely a convenient depository for Bartow's plunder. The directors of the bank knew nothing of it, but that does not relieve the corporation from the act of the officer within the general scope of his authority. To some extent the account did represent actual transactions with the bank. To some extent also it probably served as a cover for Bartow's diversion of the funds intrusted to his care. The evidence indicates that the check as a credit balanced two drafts of $2,000 and $3,000, respectively, which were drawn for the benefit of the bank, but this inference is made questionable by Bartow's admission, made under oath in 1877 to the bank examiner that the $5,000 was used by him. It is not necessary to study and attempt to unravel the contradictions and difficulties which surround this branch of the case. Enough appears to show that this check, like Mrs. Carrigan's money, was received by Bartow as treasurer, but held and indorsed and remitted by him as cashier, and under the general arrangement determining the mode of business became at once a deposit in the National Bank, for which the institute was entitled to credit.

For similar reasons we think the General Term were wrong in rejecting the Fowler check. This was drawn upon the defendant bank to the order of Bartow, treasurer, indorsed by him as such, the check charged to Fowler in the bank accounts but no credit given for it to the institute. At the moment of the receipt of this check and its indorsement by Bartow, treasurer, it became the property of the bank and entitled the insti-

tute to a corresponding credit. The construction of the respondent is that the check was paid to Bartow, treasurer. As between the bank and Fowler the check was paid, but the proceeds on the instant were re-deposited to the credit of the institute. The proceeds of the check were not drawn out by Bartow as treasurer. If he took its amount from the cash-drawer he took the money of the bank; but took it as a wrong-doer. The check, when indorsed by him as treasurer, became at once, under the existing arrangement, the voucher of the bank, and represented so much money deposited to the credit of the institute, and any conversion thereafter either of the check or its proceeds was a conversion of the property of the bank for which it was accountable to the institute.

The order of the General Term should be reversed, and the judgment of the referee affirmed, with costs.

All concur.

Order reversed and judgment affirmed.