MARY BURROWS SMITH, Respondent, v. HENRY J. ANDERSON, as Receiver of the FIRST NATIONAL BANK OF ALBION, New York, and the FIRST NATIONAL BANK OF ALBION, Appellants.

*Liability of a bank whose president deposits in the bank, and thereafter draws out and converts to his own use, the money of a third person.*

Where the president of a bank receives funds which he deposits with the bank, the bank is chargeable with all the knowledge possessed by its president in respect thereto; and in case the president, having thus deposited the money to himself, as the attorney for the real owner, subsequently withdraws the money from the bank and misappropriates it, the bank becomes liable to the owner of the funds which have thus been converted by its president.

APPEAL by the defendants from a judgment, entered in the office of the clerk of the county of Orleans on the 14th day of October, 1889, upon the report of a referee to whom the issues were referred.

*William N. Cogswell*, for the appellants.

*W. A. Sutherland*, for the respondent.

Corlett, J.:

The First National Bank of Albion was organized and commenced business on the 22d day of December, 1863, at Albion, in the county of Orleans. Roswell S. Burrows was its originator and first president. He died in March, 1879, leaving a will by which he appointed

five persons his executors. Four qualified, including Albert S. Warner; one died; two appointed Warner in their place, they taking no active part, and, at the time of the transactions hereafter mentioned Warner was practically the managing executor, and was also president of the bank. The bank continued business until the 22d day of August, 1884, when it closed its doors; its president, Warner, absconded, and the defendant was appointed receiver.

On the 15th day of March, 1884, the American Loan and Trust Company of New York executed its check to the plaintiff for $25,000 and delivered it to Isaac Signor, her attorney. The check was drawn on the Third National Bank of New York, and was afterwards indorsed by the plaintiff through Signor, her attorney, and by him delivered to Warner. Warner thereupon indorsed the check as follows: "Pay to G. L. Hutchins or order for collection. A. S. Warner, President." Hutchins was at that time cashier of the Third National Bank of New York, and Warner delivered the check to him. The Third National Bank was the correspondent of the First National Bank of Albion. On the 18th day of March, 1884, the First National Bank of Albion charged this $25,000 to the Third National Bank in the following words: "Third National Bank of New York. Amount deposited by A. S. Warner, P't, $25,000.00."

On the same day the First National Bank entered upon its journal a credit in favor of the plaintiff as follows: "Mary Burrows Smith, proceeds of loan, $25,000.00." The First National Bank drew drafts on the Third National Bank on this deposit, of which $9,448.48 were paid to the plaintiff, leaving a balance of $15,551.52. Between the 25th day of March and the 13th day of August, 1884, the plaintiff delivered to Warner for deposit in the First National Bank, in the aggregate, $14,218.03. Warner, without the knowledge or consent of the plaintiff, deposited such moneys in the First National Bank, or with its New York correspondent, to the credit of the First National Bank, and entered the same upon the books of the First National Bank in his own name as attorney for the plaintiff. She did not know until after the suspension of the bank that the account stood in the name of Albert S. Warner as such attorney. Warner, from time to time, drew checks as attorney against this account up to the time of the suspension, when the account was closed and bal-

anced on the books. Of this deposit the plaintiff received for her own benefit $5,583.47, but the rest was not used for her benefit, or drawn with her knowledge or authority.

This action was brought by the plaintiff to recover these balances. The answer admitted the formal allegations in the complaint, denied knowledge sufficient to form a belief as to the balance, and then alleged, upon information and belief, that the $25,000 charged in the complaint was, in fact, a loan to Warner. Payment is not pleaded. The issues were referred, the referee made his report in September, 1889, found the facts above stated, and directed judgment for the plaintiff against the defendant. This appeal is from the judgment entered upon the report.

In *Moore* v. *The American Loan and Trust Company* (115 N. Y., 65), it was decided, in substance, that the plaintiff borrowed the $25,000 from the trust company. The question upon this appeal is whether, upon the facts found by the referee and the undisputed evidence, the defendant, as receiver, is liable.

In *Holden* v. *New York and Erie Bank* (72 N. Y., 286); *Village of Port Jervis* v. *First National Bank* (96 id., 550); *Cragie* v. *Hadley* (99 id., 131); *Bartow* v. *People* (78 id., 377); *Fishkill Savings Institution* v. *Bostwick* (92 id., 564) and *Fishkill Savings Institution* v. *National Bank* (80 id., 162), the principle was decided on various facts that where a person occupying the position of Warner, the president, receives moneys which are deposited in the bank, his knowledge will be treated as that of the bank and it is liable to the depositor, even though the president misappropriates the moneys. If Warner had converted the money without the bank having received it, or without credit being given on its books, it would not be liable. But when its president receives funds which go into the bank, it is chargeable with all the knowledge possessed by him, otherwise those dealing with banks would be without remedy in case of fraud or misappropriation on the part of its president.

In the case at bar the plaintiff received credit on the books of the bank for $25,000, and, except as to the amount received by her, the bank or its president had the benefit of the moneys. The $14,218.03 were deposited in the bank. The fact that the president, without the knowledge or consent of the plaintiff, credited the money to himself as her attorney, and then misappropriated the funds, cannot

be urged by the bank or its receiver as a defense, for the reasons above stated. If by such a form of entry of the deposit the bank, in case of improper entries by its president on its books, or a misappropriation by him of the moneys could throw the loss upon the depositor, great mischief would result. The innocent depositor instead of the bank would lose the moneys misappropriated by its president. No authority has been cited by the learned counsel for the defendant in support of such a proposition. In the nature of things, the maxim must apply, that where one of two innocent parties sustains a loss by the fraud of a third, it shall fall upon the one whose act has enabled the fraud to be committed. (*Moore* v. *Metropolitan National Bank*, 55 N. Y., 41–47.) The bank created its president, and if, through his fraud, it or a third person must suffer, the maxim protects the customer. All the moneys having been deposited, payment is an affirmative defense. (*Seward* v. *Torrence*, 3 Hun, 220; *Brazill* v. *Isham*, 12 N. Y., 9; *McKyring* v. *Bull*, 16 id., 297; *Kelsey* v. *Western*, 2 id., 506; *Getman* v. *Second National Bank of Oswego*, 23 Hun, 498.)

Beyond the amount admitted to have been received by the plaintiff, in the absence of the defense of payment, the claim that sufficient credit was not given would not seem to be available. But it does not satisfactorily appear from the whole case that the referee awarded too large a sum on the assumption that the answer was sufficient. The deposits to the full amount having been proved, it devolved upon the defendant to show payment.

The judgment must be affirmed.

DWIGHT, P. J., and MACOMBER, J., concurred in result.

Judgment appealed from affirmed, with costs.