Myron M. Peck, Referee.
This action is brought to determine the rights as between the plaintiff and defendant, the American Loan & Trust Company, to the possession of the certificates for 200 shares of the stock of the Miagara Falls International Bridge Company, specified in the complaint. The stock, at the time of' the commencement of this action, was held by said American Loan & Trust Company in pledge as security for a loan of $25,000 made by said company, and was part of the assets belonging to the estate of one Roswell S. Burrows, deceased.
The sole point in controversy is as to the legality of this pledge and its binding force and effect upon the plaintiff as the representtative of said estate, and turns entirely upon the question of fact to whom and for whose use and benefit such loan was made.
Upon the .former trial of the action, certain questions of a legal character were presented for determination. These questions having been formally adjudicated and passed upon by the decision then made and sustained by the courts upon review, may now be regarded as eliminated from the controversy.
'The history of the prior litigation discloses the fact that, as to the sole remaining questions above adverted to, the supreme court at special and general term came to the conclusion sustaining the contention of the Loan & Trust Company in favor of the validity of the loan and the right of said Company to retain possession of such securities, while, on the contrary, the court of appeals reached a conclusion favorable to the position of the plaintiff, in opposition thereto, and his right to recovery against said Trust Company in accordance with the relief demanded in his complaint.
It is neither necessary or advisable for the referee to criticise or comment upon the reasoning and conclusions reached by these respective tribunals, nor to express any opinion with reference to *1003 the correctness of such reasoning and conclusions. Inasmuch, however, as I am not able to assent to the proposition, that a question is one of law only, which is differently determined by different judges, solely by reason of their different interpretation of the evidence given upon the trial, and the different inferences and deductions made by them in the examination and consideration of such evidence, I, of course, cannot agree with the learned counsel for the plaintiff that the determination of the court of appeals is to be regarded as in any manner binding and conclusive in the present determination of the case. Especially is this true in view of the fact that new and additional evidence to quite an extent has been produced upon the present trial. Entertaining this view of the character of the question to be determined, I may properly adopt and act upon the suggestion contained in a more recent utterance of the higher tribunals as to the duty of the trial court in its consideration and determination.
“ The question, therefore, must be submitted to a "jury. And when that is done, nothing which we have said about the facts in the performance of our duty must prejudice or control their performance of their own. 119 N. Y, 256-262. 29 N. Y. State Rep., 686.
The findings contained in the report give such a minute and detailed history of the case, as to render any extended reference to the facts in this opinion quite unnecessary, and any elaborate discussion of the question involved quite superfluous, especially in view of the extensive disoussion heretofore indulged in by the courts in their disposition of the same question, and consideration of the evidence bearing upon the same. It is, in my judgment, a proposition of fact so thoroughly demonstrated by the evidence in the case, as to preclude reasonable dispute or controversy, that the whole transaction in regard to the making of the loan was understood by the parties to be, and was in fact, between the executor of the estate of Boswell S. Burrows, deceased, on the one hand, and the American Loan & Trust Company, by its officers and agents, on the other.
The evidence does not disclose, nor legitimately tend to prove, that at any point of time, during these negotiations, the company refused to make the loan to said estate upon the security of said stock. The officers of the company at all times expressed themselves as entirely satisfied with such security. The sole difficulty existing, or supposed to exist, consisted in their erroneous interpretation of the law, as to the power and authority of one of several executors to make a loan of money, and pledge as security for its repayment the assets of the estate. And this persistent perversity of legal opinion upon this particular question, and the measures resorted to for the avowed purpose of avoiding this imaginary obstacle, has produced all the obscurity and created all the confusion which ever had existence in the case.
Except for this erroneous understanding of the law, it is entirely plain that this loan would have been promptly made by the company to the executor for the benefit of the estate upon the security originally tendered by him. But whatever erroneous opinion as *1004 to the existence of this supposed legal obstacle may have been entertained, and whatever "of transparent subterfuge may have been resorted to in the effort to surmount it, the real nature and character of the transaction itself remain the same.
From first to last it was nothing more or less than a continuous application and effort on the part of the executor to secure this loan of money with which he might be able to relieve the estate of its then alleged temporary financial embarrassment, persisted in until the purpose was finally accomplished and the loan applied for secured. He was the only party at any time,desiring to make any loan or having any pretended use for the moneys to be realized therefrom. It vras never the understanding or intention of Mary Burrows Smith that she was to become a borrower of this money. She had no occassion to become such, but was content under the circumstances to assist the executor in procuring the loan by the loan of her credit and responsibility for the purpose. It is simply sacrificing substance for shadow, and displacing sense with nonsense, to insist that any movement or proceeding connected with the transaction in any legal sense transformed Mary Burrows Smith from the position of simple surety to that of the actual borrower of the money, and rendered the pledge of the stock as security an unauthorized appropriation by the executor of the assets of the estate, which operated as a devastavit. There is no warrant in the evidence for imputing to the trust company other than the most perfect good faith in this transaction. It is not to be held responsible for the subsequent misdeeds of the executor, and if any loss has resulted therefrom the company is not legally chargeable therewith, or required to suffer thereby.
I do not attach any importance to the evidence relating to the subsequent conduct and operations of the respective parties with reference to the moneys arising from this loan and remaining apparently on deposit in the First National Bank of Albion at the time of its failure. The representatives of, and parties interested in, the estate, thereafter received certain information inducing them to suppose and believe that such moneys properly belonged to said estate, and they so alleged in certain legal proceedings thereafter instituted in favor of the estate against the receiver of the bank. On the other hand, I am furnished by the plaintiff’s counsel with the record of a recovery in the supreme court in favor of Mary Burrows Smith against said receiver for the same moneys. Affirmed on appeal, vol. 10 N. Y. Supp., 278; 32 N. Y. State Rep., 5. It is not surprising that Mrs. Smith, having discovered that no certificates of stock or other securities had ever been in fact transferred to her by way of indemnity against her liability incurred in and about the procuring of said loan, should avail herself, legally or otherwise, of the action of the officers of the bank in placing said moneys to her credit upon the books of that institution. It is manifest that no party upon either side of the question had any personal knowledge in regard to the actual occurrences connected with the making of the loan in the city of New York, and therefore the action of neither as to the recovery of said moneys possesses any particular force or significance. In *1005 view of her evidence given upon the trial, Mrs. Smith could not have consistently claimed to have been the borrower.
These proceedings cannot determine the nature and character of the contract in fact entered into resulting in the loan of thus sum of $25,000 by the defendant, the American Loan & Trust Company. There is no merit in the-plaintiff’s case, and his complaint should be dismissed.
Per Curiam.—Judgment affirmed, with costs.