brought against George Kothe and Mary Howard to set aside that conveyance as fraudulent, upon the ground that it was made and accepted for the purpose of hindering, delaying, cheating, and defrauding the creditors of George Kothe, the judgment debtor. Weaver v. Haviland, 142 N. Y. 534, 37 N. E. 641. Or, if the amount of the lien had been at least $250, perhaps then this action might have been maintained against the original grantor and grantee, as an execution could then have been issued, and the real estate advertised and sold, and the title could have been contested in an action of ejectment by the plaintiff had she become the purchaser under such a sale. Or, if the grantee had not been in possession, the purchaser might have taken possession under the sale upon an execution, and might have defended the title thus acquired against the alleged fraudulent grantee and those claiming under her. Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082. In the case at bar, for the purposes of this action, the plaintiff must be held to be a bona fide purchaser of the premises in question. Kain v. Larkin, 131 N. Y. 300, 30 N. E. 105. The conveyance having passed beyond the original grantee of George Kothe, the judgment lien has been lost. By a fraudulent conveyance, while the title remained in the fraudulent grantee, the lien of the judgment was valid, and the judgment creditor could have sold the land, under execution, upon his judgment. Smith v. Reid, supra. It is only where the lien remains an incumbrance upon the property that an action under section 1638 can be maintained.

The complaint, upon its face, as well as the facts proved upon the trial, satisfy me that this action cannot be maintained in its present form. The motion for a nonsuit and to direct a judgment in favor of the defendants is therefore granted, and the complaint is dismissed, with costs; but not upon the merits.

---

## KELLY v. CHENANGO VALLEY SAV. BANK.

(Supreme Court, Trial Term, Broome County. December 2, 1896.)

SAVINGS BANKS—LIABILITY TO DEPOSITORS.

> Defendant savings bank and a national bank had their offices in the same room. The treasurer of defendant was also the cashier of the national bank. Deposits made with defendant were originally entered in black pass books containing the by-laws of defendant, and bearing its name, and stating that its office was with the other bank. Afterwards the black pass books were taken up by the treasurer, and white pass books were issued with the name of the other bank on the cover. The deposits were appropriated by the treasurer, and were not entered in defendant's books. When depositors inquired about the change in the pass books, they were informed that the two banks were under the same management, and that the books were a part of the savings bank management. The misconduct of the treasurer covered a series of years. *Held*, that defendant could not escape liability for the deposits on the ground that the treasurer could not bind it by issuing pass books which were not in defendant's name.

Action by Nelson E. Kelly against the Chenango Valley Savings Bank. Judgment for plaintiff.

Wales & Wilbur (Mr. Hitchcock, of counsel), for plaintiff.
Deyo, Carver & Jenkins (Mr. Collin, of counsel), for defendant.

FORBES, J. This is an action to recover the sum of several deposits, and interest thereon, held by the Chenango Valley Savings Bank under a contract with the plaintiff and his assignors, for moneys deposited by them in that institution. The defendant is a duly-organized savings bank institution, incorporated and doing business under the laws of the state of New York, in the city of Binghamton. There are three classes of deposits which this action is brought to recover: First. One belonging to the estate of Freelove J. Wilcox, a lunatic, of whose estate Darwin Howard was duly appointed a committee; and subsequently, upon her death, he was duly appointed as her administrator. This claim is alleged to be owned by the plaintiff under an assignment in writing. This claim was formerly represented by two pass books,—one known as the "black pass book" of the defendant, the deposits in which commenced August 4, 1873, and continued to January, 1889. The balance of the account was represented by what is now known as the "white pass book," opened at some later date, and both accounts came into the hands of Darwin Howard as a part of the estate of said Wilcox. Second. Another claim arose out of a deposit made by the plaintiff in 1886 or 1887, originally of the amount of $205, in the name of Miss Hannah Watts, in a black pass book. This deposit appears upon what is now known as the "white pass book," under date of September 29, 1892. N. E. Kelly, the plaintiff, was authorized to draw this fund. Third. Also an account dated January 3, 1891, belonging to the plaintiff, and standing in his own name, originally in a black pass book, which account is now shown on one of the white pass books, claimed to have been issued by Tracy Morgan, the treasurer of the defendant, commencing on the 29th day of September, 1892. The plaintiff now claims to own each of these accounts,—the Wilcox-Howard account by an assignment; the Watts' account by having advanced the whole amount of said account to her, paying her in full therefor; and his own by virtue of direct deposits with the defendant. The evidence shows that practically since the organization of the defendant corporation Morgan has been its treasurer, and acting as its cashier. The savings bank was located in the office of, and doing business in the same room with, the National Broome County Bank, of which Mr. Morgan was also the cashier. What is known as the "Chenango Valley Savings Bank" was located on the east side of a common entrance hall, which was the approach to both the banks. The National Broome County Bank was located upon the west and northerly side of the room. Between these two banks, and in the rear of the savings bank compartment, was what is known as the "treasurer and cashier's room," occupied by Mr. Morgan. Upon the east and northerly side of this room was the bank vault, used by each institution. The savings bank had an assistant clerk, or cashier, Miss Robbins, who did some of the business of receiving money over the savings bank counter, and assisted the treasurer in the performance of his duties in connection with the savings bank only. Morgan had occupied these positions for many years, and until the failure of each of these banks he was regarded as a safe and competent business man, standing very high in the community in which he lived, and having

the confidence of all who knew him.    The National Broome County Bank, at the time when that institution was closed, was taken charge of by the comptroller of currency, and O. U. Kellogg, Esq., of Cortland, N. Y., was appointed as its receiver.    The defendant was in some manner reorganized, a new treasurer was elected, and the business of that institution continues in the same building.    The plaintiff and his assignors had done business with the Chenango Valley Savings Bank for many years, and, so far as any evidence discloses the fact, none of them had any actual account with the National Broome County Bank, properly speaking.    The savings bank issued what has been called the "black pass book."    This contained the by-laws of that institution, printed on the first page.    The plaintiff claims that all of these deposits which have been made and entered upon these several pass books were actually made with the Chenango Valley Savings Bank, and also claims that institution, no matter what became of the money so deposited, is liable to the plaintiff upon these several causes of action.    The defendant claims that the white pass books, and the deposits made therein, were deposited on account of the National Broome County Bank.    So far as the evidence presents any question of fact, practically the only dispute in this case is, in which one of these two institutions were these deposits actually made?    It is undisputed that Morgan was in charge of both of these institutions; that he issued what is known as the "white pass books," and that he opened a white pass book journal and ledger.    To these books large sums of money were carried under a system of deposits and checks, and it is out of those transactions that this controversy has arisen.

It is contended on the part of the defense that the treasurer, acting as cashier, could not deal with a depositor by handing to him a book containing his deposits, which book was not a savings bank book; and that one dealing with a corporation is chargeable with notice of its powers, and is bound to know the extent of the authority of its agents.    Jemison v. Bank, 122 N. Y. 135, 25 N. E. 264.    In the case at bar the treasurer and Miss Robbins had the power to receive and credit deposits made in the savings bank.    Having received them in the due course of business, was the depositor bound to know, when he was informed otherwise by the treasurer, that he had no authority to deliver the white pass book with the deposits entered therein?    In other words, was the plaintiff chargeable with notice of the fraud that Morgan was committing, without any explanation?    Should he have known that the white pass book was one which was not used by the savings bank, notwithstanding what Morgan and Miss Robbins said?    Having power and authority to receive the moneys upon deposit, and having so received them, as between the bank and an innocent party, how can the bank escape responsibility for the acts of its treasurer and cashier?    Bennett v. Judson, 21 N. Y. 238; Rumsey v. Briggs, 139 N. Y. 323, 34 N. E. 929.    These frauds were continued for several years.    The method of keeping the books was undoubtedly concocted by Morgan.    They were in the vault on the savings bank side, and the savings bank was responsible to the plaintiff for the conduct of its cashier and treasurer in

receiving the deposits. It was not a single fraud, but a series of frauds, which were perpetrated. Cutting v. Marlor, 78 N. Y. 460; Fishkill Sav. Inst. v. National Bank of Fishkill, 80 N. Y. 162; People's Bank of City of New York v. St. Anthony's Roman Catholic Church, 109 N. Y. 512, 17 N. E. 408; Phillips v. Bank, 140 N. Y. 556, 35 N. E. 982; Goshen Nat. Bank v. State, 141 N. Y. 379, 36 N. E. 316; Oakes v. Water Co., 143 N. Y. 436, 38 N. E. 461. The trustees ought to have been more watchful, and they ought, by frequent examinations, at least to have known what was going on in that institution. The bank became liable the moment the deposits were made in the savings bank as savings bank deposits. Smith v. Anderson, 57 Hun, 72, 10 N. Y. Supp. 278; Willard v. Denise, 50 N. J. Eq. 482, 26 Atl. 29, and 35 Am. St. Rep. 788, and note; L'Herbette v. Bank, 162 Mass. 137, 38 N. E. 368, and 44 Am. St. Rep. 354, and note; Bank v. Allen (Ala.) 46 Am. St. Rep. 80, and note (s. c. 14 South. 335). Morgan had been in the employment of the bank, and had been its treasurer for many years. The plaintiff and his assignors had done their business solely with the savings bank. If the directors had confidence in Morgan, taking his statements for the situation and condition of the bank and its affairs, and for the business which he was doing, is it strange that a depositor should rely upon his word, without questioning his veracity? The defendants claim that the plaintiff and his assignors were bound to know that the money was not being deposited in the savings bank from the fact that the pass books which they received had upon their outside cover the name "National Broome County Bank." The plaintiff and his assignors claim that they did see the name of the bank on the outside cover, at least after some of the deposits were made. They also claim that when they called Morgan's attention to it, or the clerk's (Miss Robbins') attention to it, they were put at ease by the explanation which was made,—that it was a part of the same management, that those books, or that system of books, was a part of the savings bank management. The black pass books, upon their face, show a fact which might have been misleading to depositors. At the bottom of the outside page the savings bank deposit books read: "Office in National Broome County Bank, Corner of Court & Chenango Streets, Binghamton, N. Y." There is no pretense that these books were ever a part of, or in any manner used in connection with, the National Broome County Bank. Page v. Krekey, 137 N. Y. 307, 33 N. E. 311. If they made the inquiry, and were misled, it is the same as though they had been unable to read, within the case last cited. It was not a case of ultra vires, within cases cited by counsel for the defense. If their version of the case is true, the receipt of the deposits was plainly within the delegated authority to its cashier and treasurer. The white pass book dealings were transactions between the treasurer and the bank. It was an attempt on the part of the treasurer to absorb the funds of the depositors of the savings bank. How could the plaintiff protect himself against the fraud being perpetrated? What other inquiry was he bound to make, within the case of Higgins v. Crouse, 147 N. Y. 411, 42 N. E. 6? Was he bound to make inquiry of any one else except Morgan and Miss Robbins,

who were in charge of the business of the bank, when their explanation had quieted him, and explained the transaction to be a reasonable one; one apparently within Morgan's authority? It was the duty of the savings bank, through its officers, to exercise due care to guard and protect its depositors. Their votes put Morgan in the bank as its cashier and treasurer. They had opportunity to examine and make searches to test the genuineness and validity of the transactions of the bank. They had unlimited power and authority to examine books, vouchers, and everything connected with the transactions of the bank. And where this man Morgan was running two banks, in the same general offices, it was their business to see that the accounts of the banks were kept separate, and by such examinations detect fraudulent transactions, if there were any. Allen v. Bank, 69 N. Y. 314; L'Herbette v. Bank, supra; Fishkill Sav. Inst. v. National Bank of Fishkill, 80 N. Y. 169. The fraud, if any were perpetrated, was not an outside transaction, but the funds were taken from the bank and put outside by its treasurer for the purpose of defrauding the bank. It is not a question of good faith between the person injured, the depositor, and the bank, within the case of Goshen Nat. Bank v. State, supra.

The evidence on the part of the defendant, showing that the credits were not entered in the books of the savings bank, is not binding upon the depositors, if the funds were there deposited. The fact that the treasurer embezzled the moneys does not affect the bank's liability, and the savings bank books cannot be used to show a want of deposits entered, for the purpose of raising the presumption that the money was deposited with the National Broome County Bank, or that it was a personal transaction with the treasurer in his individual capacity. L'Herbette v. Bank, supra. The case at bar does not fall within the rule laid down in Com. v. Reading Sav. Bank, 133 Mass. 16. This case consists of transactions in which the depositors directed that the funds be deposited with the Chenango Valley Savings Bank. The plaintiff and his assignors had the right to designate the place of deposit. The acceptance of the deposits by the savings bank made that bank liable; that fact having been found with the plaintiff. Coleman v. Bank, 53 N. Y. 388. The statements made with reference to these deposits and the white pass books were made in the course of the transactions of depositing, and whatever was said or done at that time is admissible, within the case of Bank v. Clark, 139 N. Y. 314, 34 N. E. 910. It was upon this case that the evidence of the first transaction with Morgan in reference to what Judge Edwards told the plaintiff was excluded, the court holding that Morgan "had no authority to bind his principal by statements as to bygone transactions, unless expressly authorized to make them." The balance of that transaction is competent, and must stand. Pierson v. Bank, 77 N. Y. 304; Bank v. Clark, supra. If the white pass books delivered to the plaintiff and his assignors were delivered to and accepted by them in good faith, in the honest belief that they were the obligations of the savings bank, showing the amount of their deposits, they relying upon what Morgan and Miss Robbins said with reference to the transaction, the bank is liable within the cases supra, and West

v. Bank, 20 Hun, 408; Institution v. Bostwick, 92 N. Y. 564.   The white pass books were the evidences of the indebtedness to the depositors, and it is competent to show the nature of the transaction for the purpose of showing with whom it was intended the money was to be deposited.    Hotchkiss v. Mosher, 48 N. Y. 478; Bank v. Clark, 134 N. Y. 368, 32 N. E. 38.    It was not a contract within these cases with the National Broome County Bank.    As between himself and the bank, while Morgan had no right, probably, to use the white pass books after receiving money from the depositors, the evidence shows that he did use them only in connection with the savings bank deposits, for the purpose of covering up a series of frauds which he was perpetrating against the depositors in the business of the savings bank.    The proof is that the white pass book ledger, journal, and white pass books were kept in the bank on the savings bank side, either upon the counter, or in the savings bank side of the vault. What excuse had the other officers of the bank for not knowing something of these transactions, under those circumstances?    It is true that they swear that they never knew of them, and had never seen them; but the treasurers, clerks, and bookkeepers in both banks did know it, and that these books were used only in reference to that class of deposits taken through the savings bank.    None of these transactions were ever transferred to, or in any way mixed up with, the National Broome County Bank's office or its books, while at least one of the deposits is traced directly to the savings bank books, and the balance of the deposits are found upon the white pass book journal and ledger, belonging to and used in the savings bank part of the building.

There is no question about Morgan's or Miss Robbins' agency for the defendant, and that they had the right to receive and credit money from these depositors.    The plaintiff and his assignors were told that it was all under one management.    The regular savings bank book discloses the fact that the savings bank office was in the National Broome County Bank.    The plaintiffs had the right to rely upon the fact that it was all under one management, especially when they deposited their money with that understanding.    White v. Miller, 71 N. Y. 118; Alexander v. Cauldwell, 83 N. Y. 481; Wait v. Borne, 123 N. Y. 592, 25 N. E. 1053; Bank v. Clark, 139 N. Y. 314, 34 N. E. 910. At the time the money was deposited it is shown that the savings bank had no right to pay a greater rate of interest than $3\frac{1}{2}$ per cent., and under the rules and by-laws of that institution, clearly, Morgan had no power to agree with the plaintiff and his assignors for a greater rate of interest.    The regular savings bank book, or what is known as the black pass book, provides by section 4: "That the depositor shall be bound by the by-laws and rules of this corporation on receiving a book in which the same are printed."    Section 1 provides: "All money shall be deposited and invested in the name of the Chenango Valley Savings Bank."    None of these instructions were in the white pass books, and, while it is true that the black pass book was surrendered, the receipt of the white pass book in its place did not make the by-laws of the savings bank institution a part of the new contract with the depositor.    It was only when he received a

book in which those by-laws were printed that the depositor was bound. Many of the vouchers put in evidence disclose the fact that Morgan understood where the plaintiff and his assignors intended to and did deposit their moneys, since, when each check was given upon the National Broome County Bank, where the plaintiff had no account, the check was laid aside, and Morgan took it up with a savings bank check; thus showing that the treasurer of the Chenango Valley Savings Bank, and the cashier, teller, and bookkeepers of the National Broome County Bank understood that each transaction was a transaction with the Chenango Valley Savings Bank, and not with the National Broome County Bank. Mr. Morgan and Miss Robbins were not called upon the trial. They knew what the real transactions were, and the presumption is that they would not have corroborated the defendant's version. Milliman v. Railroad Co., 3 App. Div. 109, 39 N. Y. Supp. 274, 3 N. Y. Ann. Cas. 29, and note; Gordon v. People, 33 N. Y. 501; Bleecker v. Johnston, 69 N. Y. 309; Kenyon v. Kenyon, 88 Hun, 211, 34 N. Y. Supp. 720; Wennerstrom v. Kelly (Com. Pl.) 27 N. Y. Supp. 326; Wilson v. Railroad Co., 8 Misc. Rep. 450, 28 N. Y. Supp. 781; Horowitz v. Packet Co., 18 Misc. Rep. 24, 41 N. Y. Supp. 54. If the transactions were honest and fair ones, the defendant should have called its agents, or should have accounted for their absence, within the line of authorities supra.

The well-known reputation of Mr. Morgan as the treasurer and cashier of these two institutions easily led the unsuspecting depositor to readily give credit to all he said, and rely upon that implicitly, without further examination, or inquiry into the method of doing business with the defendant. Under ordinary circumstances, it might seem plain that the plaintiff and his assignors ought to have known that their accounts upon the white pass books were intended to be transactions with the National Broome County Bank, and, had that business been transacted with a stranger, instead of with an officer so much trusted by the depositor, so high above reproach, and apparently beyond the reach and need of investigation, on the part of the bank officials, the plaintiff could not have been excused for not knowing that fact. A further investigation would have been necessary. When his curiosity was aroused by the transaction, by the change in the form of the pass books, his suspicions were quieted by the assurance on the part of the treasurer, Morgan, and by Miss Robbins, that the transaction was the ordinary one, and that his credits by the savings bank were shown upon the pass book given to him, in whatever form. Hess v. Culver, 77 Mich. 598, 43 N. W. 994, and 18 Am. St. Rep. 421, and note. After an exceedingly careful review of all of the evidence given upon the trial, making full allowance for the rigid cross-examination of the plaintiff and his assignors, it seems to me that justice demands that judgment be directed in favor of the plaintiff for the several sums deposited in the defendant bank, with interest thereon, to be computed under the rules of that institution, at $3\frac{1}{2}$ per cent., then authorized to be paid to depositors; and judgment is ordered accordingly.