THE FISHKILL SAVINGS INSTITUTION, Respondent, *v.* THE NATIONAL BANK OF FISHKILL et al., Appellants.

A principal is liable, as a general rule, for such wrong of his agent as is committed in the course of his employment and for the benefit of the principal ; and this, although no express command or privity is proven.

A corporation is liable for its wrongful acts and omissions and for the acts of its agents while engaged in the business of their agency to the same extent and under the same circumstances as natural persons.

One B. was in March, 1874, cashier of defendant, the National Bank of Fishkill, and its managing officer and general agent; he was also plaintiff's treasurer. He took certain bonds belonging to plaintiff which, in the name and as cashier and managing officer of said defendant, he pledged, with various parties as securities for loans. In January, 1876, B. re-possessed himself of the bonds, and returned them to plaintiff, but on the thirty-first of that month again took them, and in the same manner pledged them with W. and McM., a banking firm, as security for advances made and to be made to defendant; the bonds were subsequently sold pursuant to the conditions of the pledge, and the proceeds credited to said defendant. In an action for conversion of the bonds, *held*, that said defendant was liable ; that ignorance on the part of its directors was not a defense, as, if ignorant, it was because they omitted the performance of official duty ; that although B. had no authority to take the bonds, when he pledged them he represented the bank, and his knowledge was notice to it.

Also, *held*, that a counter-claim could not be allowed in such an action.

(Argued January 28, 1880; decided February 24, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 19 Hun, 354.)

This action was brought to recover for the alleged conversion of certain United States bonds.

The facts appear sufficiently in the opinion.

*John Thompson* and *Homer A. Nelson*, for appellants. The Bank of Fishkill was in no sense a bailee of the bonds left by the owner with the cashier for safe-keeping. (*Ocean Bank Case*, 60 N. Y., 278; *Wiley* v. *Nat. B. Brattleboro*, 47 Vt., 546; *City Nat. B.* v. *Paduca*, Thomp. U. S. Cases, 305; *Weckler* v. *Hagerstown B.*, id., 533; 7 Abb. Nat. Dig., 41, § 16; *Fowler* v. *Scully*, 72 Penn. St., 456; *Shinkle* v. *Bank of Ripley*, 22 Ohio, 516; *Wiley* v. *Bank of Brattleboro*, 47 Vt., 346; *Bank of Lyons* v. *Ocean Bank*, 60 N. Y., 278.) Anything the plaintiff had received belonging to the defendant or any moneys not actually received by the defendants in the transaction, are subjects of allowance in adjusting what is actually done. (*Chanboret* v. *Cagney*, 2 Sween., 380; *Xenia Bank* v. *Lee*, 2 Bosw., 694; see 7 Abb., 372; 11 id., 387; 21 How., 190; 40 Jones & Spencer, 100.)

*Milton A. Fowler* and *William S. Eno*, for respondent. A corporation is liable to the same extent, and under the same circumstances, as a natural person for the consequences of its wrongful acts, and for any description of forcible, malicious or negligent tort or wrong which it commits. (*N. Y. and New Haven R. R. Co.* v. *Schuyler*, 34 N. Y., 30–49; *Bissel* v. *The Michigan Southern R. R. Co.*, 22 id., 305; *Parish* v. *Wheeler*, 22 id., 494; *Frankfort Bank* v. *Johnson*, 24 Me., 490; *Phil. and Baltimore R. R. Co.* v. *Quigley*, 21 How. U. S. R.; *Life and Fire Ins. Co.* v. *The Michigan Fire Ins. Co.*, 7 Wend., 31; *Goodspeed* v. *East Haddam Bank*, 22 Conn., 541; Angell on Corporations, 382, 388,

391; *Mix* v. *Andes, Ins. Co.,* 74 N. Y., 53–56; *Beach* v. *Fulton,* 7 Cow., 485.) A corporation is, from its nature, incapable of doing any act except through agents, and is therefore responsible for the acts, negligence or frauds of its agents, while engaged in the business of the agency, to the same extent and under the same circumstances as a natural person. (*N. Y. and N. H. R. R. Co.* v. *Schuyler,* 34 N. Y., 30–50; *F. and M. Bank* v. *B. and D. Bank.,* 16 id., 125; *Frankfort Bank* v. *Johnson,* 24 Mo., 490; Story on Agency, § 308; Angell on Corps., § 382.) Bartow, the cashier, by virtue of his position as cashier, had power to borrow money on behalf of and for the bank. (*Barnes* v. *Ontario Bank,* 19 N. Y., 152; *Ballston Spa Bank* v. *The Maine Bank,* 16 Wis., 120; *City Bank of New Haven* v. *Perkins,* 4 Bosw., 420.) The notice to the president of the first pledge was notice to the bank. (*Fulton Bank* v. *The New York and Sharon Canal Co.,* 4 Paige, 127; *Porter* v. *Bank of Rutland,* 19 Vt., 410; *Com. Bank* v. *Wood,* 7 Watts [Pa.], 89; *Dillon* v. *Anderson,* 43 N. Y., 231; *Homer* v. *Mills,* 53 id., 322–328.) The Fishkill National Bank having received actual knowledge by notice to its board of directors of the act of its cashier and agent, Bartow, in pledging these bonds in the name of and for the benefit of the bank, and of the receipt by the bank of the proceeds of the pledge, it was bound to disaffirm the act and make complete restitution of the benefits received if it would escape its consequences. (*Bennett* v. *Judson,* 21 N. Y., 238; *Crans* v. *Hunter,* 28 id., 389; *Elwell* v. *Chamberlain* 31 id., 611–619; *Hazard* v. *Spears,* 4 Keyes, 469; Story on Agency, 1, 244–250.) The principle of law that money fraudulently or feloniously taken and paid over to a third person cannot be followed and reclaimed, only applies when it is paid to a person in good faith for value and without notice. (*Newton* v. *Porter,* 69 N. Y., 133; *Reynolds* v. *Kenyon,* 43 Barb., 585; *Holden* v. *Erie Bank,* 72 N. Y., 298.) The knowledge of Bartow, the officer and agent of the bank, was the knowledge of the bank. (*Hol-*

*den* v. *The N. Y. and Erie Bank*, 72 N. Y., 286, 298; *New Hope and Del. Bridge Co.* v. *The Phœnix Bank*, 3 Comst., 156, 166.)

DANFORTH, J. Upon the facts disclosed by the record, I think the case is with the respondent. Bartow was the cashier of the defendant, The National Bank of Fishkill. He was its managing officer, its general agent in business. As such he contracted debts, and borrowed money, during a series of years, with the knowledge of its directors, and with their consent and approbation. He was at the same time the plaintiff's treasurer. In March, 1874, the plaintiff owned the bonds in question. The defendant, the national bank, had for its correspondent in New York, the Merchants' Exchange National Bank. In the latter part of March, or first of April, 1874, Bartow possessed himself of the plaintiff's bonds, and in the name of the Bank of Fishkill, and as its cashier, pledged them with the Merchants' Exchange National Bank as collateral for advances made, and to be made to the Fishkill Bank. Upon the faith of this security the latter bank, in the usual and ordinary course of business, continued to draw upon the former, until in July, 1874, its indebtedness amounted to upwards of $60,000. On the thirty-first day of that month, the Merchants' Bank loaned to the Fishkill Bank $60,000, upon the security of the bonds, and the sum so loaned was applied to the payment of so much of its indebtedness. Subsequently this loan was paid up. The Fishkill Bank also dealt with the banking firm of Wilmerding, Duer & Company, and on the 7th day of June, 1875, Bartow, in his capacity of cashier, took the bonds from the Merchants' Bank, and in the name of the Fishkill Bank, and as its cashier, pledged them with that firm, as collateral security for the payment of the account of the bank, and for further advances to be made to it. In January, 1876, he re-possessed himself of the bonds, by furnishing other security of the property of the Fishkill Bank, and restored them to the Savings Institute. If nothing more

had been done, it is obvious that although a conversion had taken place, for which an action might even then have been maintained, the recovery would have been nominal. But on the 31st of January, 1876, Bartow, as cashier of the defendant, and in its name, and on its account returned the bonds to the banking firm, then doing business under the name of Wilmerding & McCandless, and took back the security which he had put in the place of the bonds. Further advances were made by that firm to the bank, in the usual course of business, so that in September, 1876, they owed the firm $116,568.16, and the latter held as collateral security therefor, the bonds in question and other security, amounting in all to $118,000. The bonds were subsequently sold by this firm, or its successor, in pursuance of the conditions of the pledge, and the entire proceeds placed to the credit of the National Bank of Fishkill. In all these matters Bartow was acting for the bank, as its managing officer, and in its name. He exceeded his authority only when he appropriated the plaintiff's bonds to the defendant's benefit. It is this which constitutes the conversion on which the plaintiff relies. Undoubtedly he was personally liable for it. The complaint states the conversion to have been by the bank. In support of that averment it is now alleged that the above facts show a conversion by Bartow, the cashier, committed by him in the course of his conduct of the bank's business, and that therefore the cause of action is made out. Such is in effect the finding of the referee. It is in general words, "that on January 31, 1876, the bank took from the plaintiff, without its knowledge or consent, and wrongfully converted to its own use, bonds of the par value of $60,000, but of the value at the time of said conversion of $70,800." No other finding was made as to any fact relating to it, nor was any request made for further findings. The defendant moved for a nonsuit, and by that motion, and an exception to the above conclusion, the question is presented whether the bank is answerable for the cashier's fraud. The general rule makes the principal liable for such wrong of the agent

as is committed in the course of his employment, and for the benefit of the principal, and this is so, although no express command or privity is proven. (*Barwick* v. *English Joint-Stock Bank*, L. R. [2 Exch.], 259.)   There the manager of the bank had induced the plaintiff to supply J. D., a customer of the bank, with oats on credit, for carrying out a government contract, and to effect this gave the plaintiff a written guaranty that J. D.'s check on the bank in plaintiff's favor, in payment for the oats supplied, should be paid on receipt of the government money, in priority to any other payment " except to this bank."   J. D. was then indebted to the bank to the amount of £12,000, but this fact was not known to the plaintiff, nor was it communicated to him by the manager.   The plaintiff thereupon supplied the oats to the value of £1,227.   The government money amounting to £2,676 was received by J. D. and paid into the bank, but J. D.'s check for the price of the oats, drawn on the bank in favor of the plaintiff, was dishonored by the defendant, who claimed to retain the whole sum of £2,676 in payment of J. D.'s debt to it.   The plaintiff brought an action against the bank for false representation, and it was held that the bank was liable for the fraud of the manager, its agent, and also that in the pleadings it was well described as the fraud of the bank.   This was concurred in by all the judges of the Court of Exchequer, as within settled principle and adjudged cases. And the case itself is cited with approbation by the judge delivering the opinion in *Mackay* v. *The Commercial Bank of New Brunswick* (L. R. [5 Privy Council Apps.], 394), and the doctrine above adverted to reiterated, the court saying " there is no distinction between the case of fraud and the case of any other wrong ;" and both cases hold that an action of deceit may be maintained against a company, whether incorporated or not incorporated, in respect of the fraud of its agent.   The principle which controlled those decisions, and the cases themselves, are, I think, in point upon the one before us.   Bartow possessed himself of the bonds by breach of trust, or as the appellant claims by theft.

It was to aid the bank, and to use them for its benefit. The manager of the bank in the first case cited made use of fraud or false pretences. The intention and the result were the same in each case. The property of another was obtained wrongfully, and the application of it was the same, to the benefit of the principal. If there is a distinction it is not other or different from that which is pointed out between larceny and false pretences, a technical one, affecting the criminal, but not varying the right of the party who has been wronged, to compensation, or restoration of the property obtained from him. The same doctrine is held in *Johnston* v. *South - Western Railroad Bank* (3 Strobart [S. Car. R.], 263). The bank, by the fraud of its agent, obtained certain assets as security for its liabilities through another bank, and it was held that it was bound to make good the representations of its agent, and to answer positively for his acts, and so was bound for the assets in the same manner as if they had been received by itself. To the same effect are the decisions heretofore made by this court. They establish that a corporation is liable for the consequences of its wrongful acts and omissions, and for the acts of its agents while engaged in the business of their agency, to the same extent and under the same circumstances as natural persons. They illustrate the familiar principle that though a principal is not liable *criminaliter* for the conduct of his agent, he is responsible *civiliter* for all acts done by him in the course of his employment, and bound by his fraud whether he concurred in it or not. For acts wholly foreign to the business in which the agent is engaged, the principal is not bound. But that cannot be extrinsic to his employment which is adopted as a means of accomplishing the object of his agency. (*N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30; *Holden* v. *N. Y. and Erie Bank*, 72 id., 286.) I do not think the case for the plaintiff would be any stronger if the actual concurrence of the directors in the cashier's fraud was established. If they were ignorant of it, it is because they omitted the performance of official

duty, and so were not less bound than if the ignorance was intentional, that they or the bank they represent might profit by it. This the law will not tolerate. (*Kennedy* v. *Green*, 3 M. & K., 699.) There is indeed evidence which permits an inference that the president of the bank was informed of the use being made of the bonds while they were in pledge to the Merchant's Bank, and subsequently and in January, 1877, that the board of directors were informed of the use which had been made of them through the banking firm, but they neither restored them, nor made compensation. This, however, need not be relied upon, for it is apparent that the least degree of that diligence and care to the exercise of which the directors of the bank were bound by the simplest obligation of duty, would have disclosed to them the large outstanding indebtedness of the bank, and the means adopted by Bartow to carry it along. The defendant should be treated as if they had made the inquiry and ascertained the fact. (*New Hope and Delaware Bridge Co.* v. *Phœnix Bank*, 3 Comst., 156.) Indeed a direct resolution of the board of directors, leading their cashier's steps in the direction which they took, would be no more convincing of their moral participation in the wrong done, than is the indifference and heedlessness to their own duties through which alone he was able to perpetrate the fraud. He was the general manager of the bank, he was to see to its finances, and look to and maintain its credit. Without these, there could be no corporate existence. To secure and perpetuate this was the end pointed out; the means were left to his discretion. In such a case the principal is bound not only as to the end but the means also. (*Johnston* v. *S. W. R. R. Bank; Mackay* v. *Commercial Bank of New Brunswick; Barwick* v. *English Joint Stock Bank; Holden* v. *N. Y. and Erie Bank, supra.*) It is true he had no authority to commit a fraudulent act. None to take the bonds from the plaintiff. But he had authority to transact the business with the banking firm, in the course of which he disposed of the bonds for the benefit of the defendant, and in prosecuting its business.

Then when he pledged the plaintiff's bonds to secure money, or credit for the defendant, he represented the defendant; for, as was said in the case of *Holden* (*supra*), " the subject-matter of his agency was the conduct and direction of the affairs of the bank," and his knowledge of the instrumentality employed, was notice to the bank. This is so by the well established rule, that notice to the agent is notice to the principal. It is objected that the action should have been for money had and received, and not in tort. I am not sure that such an action would have lain ; but however that may be, I think this action was well brought. *Beach* v. *Fulton Bank* (7 Cow., 485) was trover against the corporation, and it was sustained. Upon principle it should be so. (*Yarborough* v. *Gov.*, *etc.*, *of Bank of England*, 16 East, 6; *Gray* v. *Pres't, etc., Portland Bank*, 3 Mass., 364.) The wrong in this case was committed for the benefit of the defendant. Its purpose was to put the bank in funds, and however Bartow may have brought about the necessity for resorting thereto, its proximate object was to relieve the bank. The bank had the entire avails of the property converted. Moreover it ratified and adopted the wrong, when it secured its fruits. (*Bennett* v. *Judson*, 21 N. Y., 238.) But if it had been otherwise it would be unjust to the plaintiff to measure its damages by the sum actually received by the defendant, rather than by the value of the property, and to this end again, may be cited *Holden* v. *N. Y. and Erie Bank* (*supra*). " As it (the bank) was at liberty to refuse to take the deposit from him, as it was its duty to decline any advantage thus proffered it, by taking it and receiving the advantage — knowing the transaction to be wrong and fraudulent — it became a party to it, and liable in an action for restoration." These views are an answer also to the appellant's position, that a counter-claim should be allowed, for if the action is well brought there could be none. I have moreover examined the evidence, and find none which in any form of action would establish it. The evidence warrants the finding of fact made by the referee,

and upon that finding the judgment, according to just rules of law, was rendered.    I think it should be affirmed, with costs.

All concur.

Judgment affirmed.