## MUTUAL ASSURANCE COMPANY OF THE CITY OF NORWICH

*vs.*

## NORWICH SAVINGS SOCIETY

Superior Court     New London County     File No. 14146

MEMORANDUM FILED JUNE 3, 1941.

*Geary, Davis & Keefe,* of New London, for the Plaintiff.

*Waller, Gallup & Anderson,* of New London, and *John P. Huntington,* of Norwich, for the Defendant.

DICKENSON, J. The complaint sets up deposits made in the defendant bank by the plaintiff insurance company, a balance on deposit, a demand for that balance and a refusal to pay it. It contains the further allegation: "Said deposits being evidenced by Deposit Book No. 191898 of the defendant issued to and in the name of the plaintiff, a copy of the entries of deposits, payments and balances appearing in said Book No. 191898 and by-laws printed on said book being annexed hereto as Exhibit A." The claim of the plaintiff is that the deposit book represents the true state of the account, except as to interest.

The defendant's final answer, the substituted answer, dated February 18, 1941, as amended by an amendment dated April 29, 1941, admits a refusal to satisfy the demand for payment of the plaintiff, denies the pass book shows the correct bal-

ance, sets up withdrawals by the plaintiff by its treasurer not evidenced on the pass book but evidenced by entries and receipts, credits the plaintiff with certain dividends, admits a balance due of $3,777.47, and offers to pay this with subsequent accrued dividends.

The evidence disclosed the following situation: The plaintiff's treasurer Hull was the defendant's assistant treasurer. He had possession of the plaintiff's pass book. He withdrew money from the defendant bank, made entries on the bank's books and made out and placed receipts in the bank's files to cover such withdrawals without making corresponding entries in the pass book and appropriated the money to his own uses.

The plaintiff claims he thus embezzled the bank's money and the pass book truly indicates its balance. The defendant claims he withdrew the money as agent of the plaintiff.

Passing for the moment the full legal effect of the pass book it may be said that it established a *prima facie* case, at least, and placed the burden of proof on the defendant to show a different balance.

We start with the premise that the deposits commingled with other funds of the bank was the bank's money in the custody of the bank and was taken by Hull. While Hull was an officer of both parties he was the agent of neither in the transaction. He had no authority to withdraw money for his own use as treasurer of the plaintiff and he had no authority to pay it to himself as assistant treasurer of the bank. He necessarily had knowledge as agent of the plaintiff that he had no right to receive the money and as agent of the bank he knew he had no right to pay the money to himself as agent of the plaintiff. While he apparently would have the right to withdraw money for a proper purpose he had no right to withdraw it for this purpose and as the bank officer knew he had not.

"A person dealing with an agent cannot hold the principal, even though the agent is authorized, if he knows the principal does not consent to the transaction, or if he knows of facts which prevent the existence of authority." *Restatement, Agency* §329(g). As an officer of the bank Hull knew he had no authority to withdraw the money for his own use as officer of the plaintiff company.

Further in support of the plaintiff's claims is the matter of

the pass book. In his dual position Hull made bank entries in the books of the bank over which he had control but he made no entries in the pass book of the sums he withdrew. The importance of such a book is not evidenced by the rules of the bank contained thereon alone. Its importance has been recognized by the Legislature which provides in section 3983 of the General Statutes, Revision of 1930, for proceedings in case of its loss requiring payment upon proper notice of the "amount due on such book" or issuance of a duplicate one. Section 3921 provides for payment by receivers of any such bank of deposits "as shown by the depositor's book or the records of the bank", indicating the presumption that they will be similar records. Section 3987 provides for the deposit of pass books as a pledge, good indeed only against the pledgor unless followed by a transfer on the bank's books, but indicating the importance of the book.

The evidence in the case is to the effect that Hull had the pass book and kept it in a safe deposit box in the bank. As bank officer it was his duty to make entries in it of withdrawals, as he well knew. His failure to do this is further evidence that it was the bank he was defrauding and not the plaintiff.

And this brings us to a consideration of the defendant's evidence of payment to the plaintiff. This consists of entries and receipts of the bank indicating withdrawals. These were made by Hull. They are not conclusive against the plaintiff any more than the absence of entries in the pass book is conclusive evidence of nonpayment. Both are evidence to be weighed in the balance in determining whether the plaintiff has established a fair preponderance of it. The "business entries" statute, section 1675c of the 1935 Cumulative Supplement to the General Statutes, provides that entries of this character are admissible and their admissibility is not affected by the failure of the one offering them to produce those who made them or are familiar with them or to show such persons unavailable as witnesses. But it reaffirms a rule of evidence that such failure may be shown to effect the *weight* of such evidence.

The rule that omission to call an available witness or to explain the absence of a material witness justifies an inference unfavorable to the party who should call him is too well recognized to require extensive citation of authorities. *Baker vs. Paradiso,* 117 Conn. 539, 546.

It was not the duty of the plaintiff to show why entries of withdrawals were not made in the pass book if such there were. The defendant in its answer alleges the payments were made, the pass book was not presented and payments not entered in the pass book, but receipts were given by the plaintiff's treasurer. There is no evidence that the pass book was not "presented" and there is evidence that it was found in Hull's safe deposit at the bank. Hull was not produced as a witness although in response to a query of the court it was stated he was in the State Prison. The evidence of the pass book with the added inference that had Hull been produced by the defendant his testimony would have been that the plaintiff did not withdraw the money is sufficient to establish a fair preponderance of evidence in favor of the plaintiff.

Of the Connecticut cases that of *Lowndes vs. City National Bank of South Norwalk,* 82 Conn. 8, seems most closely related to the instant one. In that case one Layton occupied the dual position of cashier and managing officer of the defendant bank and administrator of the Lowndes estate, the funds of which he deposited in the bank and later appropriated to his own use. The defendant quotes from the case (p. 19) to the effect that although a bank undertakes to supervise and safeguard a trust fund its duty ceases after the fund is withdrawn and it is not concerned with its use, and a further statement in the nature of *obiter dictum* suggesting that a bank might be protected in honoring a check regularly drawn and presented by a custodian of a trust fund even though it knew such custodian was appropriating such funds. Passing the question of whether the court would not take such a stand in a concrete case (*See Restatement,* §329(g), *supra*) the facts in the instant case are not parallel or indeed were they in the *Lowndes* case. In both the taker and receiver of the money was the same person and of this situation it is said (p. 13): "The defendant had knowledge of all that its teller and bookkeeper knew and that was all the facts of the situation." And (p. 22): "Whatever knowledge he [Layton] had in that respect [as to the ownership of the funds], although acquired in his individual capacity, he under the circumstances of this case carried over with him into the exercise of his duties and powers as cashier. He carried it with him into every transaction in which the bank participated through him."

The defendant further refers to a check for $2,000 in the

*Lowndes* case drawn by Layton, payable to himself, which the court held good (p. 23) because it did "not appear that any of this money was misappropriated, and it was not the duty of the bank to see that it was rightfully appropriated."

The defendant failed to include in the quotation the sentence: "The check from Layton, administrator, to Layton, individually, was not irregular on its face", and the earlier statement (p. 23) that the "amount thereof was paid to him." It does not appear, in other words, that in this transaction he was the taker and receiver but the suggestion is he regularly presented the regularly drawn check for payment and the bank paid it without knowledge, or indeed concern, as to what he intended to do with the proceeds. In the instant case as has been noted the only evidence offered by the bank as to payment is that of entries by, or receipts signed by, Hull.

Finally it is to be noted that the defendant has adopted Hull's acts in relation to payments as its own. If it accepts his agency it must take it with all its infirmities.

It is found the plaintiff has established by a fair preponderance of evidence that its pass book represents the amount of money it had on deposit with the defendant and, demand having been admitted, judgment is directed for the plaintiff to recover the amount of said deposits with interest figured according to the stipulation for the same between the parties on said deposits, $10,575.24.